*McLaughlin v. Pallito*, No. 42-1-14 Wncv (Teachout, J., January 13, 2014)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 42-1-14 Wncv** |

**William McLaughlin**
    **Plaintiff**

    **v.**

**Andrew Pallito, Commissioner,**
**Vermont Department of Corrections**
    **Defendant**

## DECISION
### Mr. McLaughlin's Motion for Summary Judgment

Vermont Inmate William McLaughlin has been held in administrative segregation at the Lee Adjustment Center in Beattyville, Kentucky for a protracted time, currently exceeding one year.[1] He claims that the processes by which the Department of Corrections (DOC) placed him in segregation and has kept him there since violate his due process rights and the DOC's own directives.[2] He requests that this court order the DOC to release him from segregation or to conduct an administrative segregation hearing that fully complies with his procedural rights. Mr. McLaughlin has filed a motion for summary for judgment, which the DOC opposes.

Mr. McLaughlin originally was placed in segregation pending a disciplinary hearing related to suspected involvement in a fight resulting in the broken jaw of another inmate. That disciplinary proceeding was dismissed, and another was begun, when video footage of the incident was found to show that Mr. McLaughlin was involved in a different fight. He was convicted of the second violation before a Lee Adjustment Center hearing officer. That conviction later was vacated and he was granted a new hearing before a Vermont hearing officer. The third proceeding resulted in a conviction, but Commissioner Pallito reversed it on February 13, 2014 out of "procedural and due process concerns" despite, according to him, "compelling" evidence of guilt. The disciplinary violation was expunged and there were no further disciplinary proceedings related to the fight. Nearly a year later, Mr. McLaughlin remains in segregation.

---

[1] Mr. McLaughlin alleges that he was first placed in segregation in December 2013. No filings in this case, the most recent of which is August 4, 2014, indicate that he ever has been removed from segregation. For purposes of this decision, the court assumes that he remains in administrative segregation now.

[2] Vermont inmates are housed at the Lee Adjustment Center under contract between the DOC and Corrections Corporation of America (CCA). There is no dispute that the DOC's directives controlling administrative segregation apply to this inmate population and no party has asserted that this court lacks personal or subject matter jurisdiction. Moreover, there is no suggestion that, in relation to Mr. McLaughlin, the distinction between the DOC and CCA has any bearing on this case. The court thus refers in this decision to the DOC and the operators of the Lee Adjustment Center collectively as the DOC.

During the disciplinary proceedings, it is unclear which segments of Mr. McLaughlin's segregation were disciplinary and which administrative. It is similarly unclear whether the conditions of confinement differ with the classification. There appears to be no dispute that all or nearly all of the subsequent segregation has been administrative. The actual conditions of Mr. McLaughlin's confinement while segregated are not in the record.

*Placement in administrative segregation*

Procedural aspects of administrative segregation are set out in Directive #410.03. Placement on administrative segregation generally begins with a placement report stating specific reasons that warrant segregation. Directive #410.03, Procedural Guidelines § 2(a). A notice of hearing is completed and reviewed with the inmate. *Id*. § 2(b). The Superintendent reviews the report and the notice to ensure that there is just cause for segregation and that notice was proper. *Id*. § 2(c). A due process hearing must occur no later than the fourth day of segregation. *Id*. § 2(d).

A hearing officer presides over the due process hearing. *Id*. § 3(g). A presenting officer, "who was not involved in the preliminary decision to place the inmate on segregation," makes the case in favor of segregation. *Id*. § 3(e). The inmate has a right to appear at the hearing, *id*. § 3(c), with the benefit of a hearing assistant, *id*. § 3(d), to make the case against segregation. At the hearing, the inmate has the right to be present and to be heard, to call and cross-examine witnesses, and to submit a written statement and other documentary evidence. *Id*. § 3(g)(iii) and Attachment #3 (Notice of Hearing) to Directive #410.03. The hearing is recorded by "digital, audio or audiovisual equipment." *Id*. § 3(g)(ii).

After considering "all evidence presented," *id*. § 4(c), the hearing officer then makes findings and a recommendation in favor of or against segregation, *id*. § 4(a), (b). "No inmate may be recommended for Administrative Segregation unless it is supported by at least a preponderance of the evidence presented. *Id*. § 4(c). To warrant segregation, the findings must establish one of the following:

> a. An inmate is charged with a disciplinary violation (DR) and is awaiting a disciplinary hearing, and, in the judgment of staff, may become disruptive or be dangerous if left in general population. If a DR hearing, [sic] is held within four (4) business days after the inmate is placed in segregation, an Administrative Segregation hearing does not need to be held.
>
> b. An inmate may pose a serious escape risk;
>
> c. An inmate requests and/or requires protective custody;
>
> d. An inmate is a danger to others;
>
> e. An inmate has demonstrated that they are a threat to the secure and orderly running of the facility;

f. During investigation of an allegation of, or information about, an inmate's involvement in the commission of a crime, and staff feel the inmate poses a threat to the secure and orderly operation of the facility;

g. Upon the order of a physician or equivalent provider (Advanced Practice Nurse, Nurse Practitioner or Physician Assistant).

*Id*. § 1. The Superintendent must approve segregation. *Id*. § 4(d). The inmate then may appeal to the Commissioner. *Id*. § 5.

*Following placement in administrative segregation*

Nothing in Directive #410.03 provides any temporal limit on the duration of an inmate's segregation. Instead, the inmate's segregation undergoes 7, 30, and 60-day reviews indefinitely. At each 7-day review, the segregation review committee reviews the inmate's status. Directive #410.03, Procedural Guidelines § 6(c). The directive describes no process with regard to how this is done, though the committee will consider a written statement from the inmate if one was submitted during the previous week. At each 30-day review, the review committee "will make a new written finding of fact and determination regarding placement." *Id*. § 6(d)(ii). The inmate is allowed to submit a written statement and is permitted to attend the review, though evidently has no other procedural protections. *Id*. § 6(d)(i). It is unclear whether the committee's finding is whether there is a continuing basis for segregation or something else. If the former, it is unclear upon what record such a finding might be based. At each 60-day review, the deputy commissioner reviews documents, including the inmate's behavioral plan, DRs and incident reports from the past 60 days, a medical/mental health treatment plan, etc. *Id*. § 6(e). The inmate has no procedural rights at the 60-day review.

The culmination of each review is a recommendation to the Superintendent to:

i. Continue on the current status;
ii. Modify the conditions of confinement;
iii. Move to Phase II Segregation (after 30 days only);
iv. Remove from Administrative Segregation.

*Id*. § 6(f). Phase II Segregation presumably is less restrictive; it requires good behavior, completion of in-cell programming requirements, and adherence to the behavioral plan. *Id*. § 7. The inmate must be released from segregation when one of three conditions is present: "1) the condition, which required placement, is no longer present; 2) upon completion of a disciplinary hearing and transfer of the inmate to Disciplinary Segregation; 3) upon approval of a physician who authorized placement." *Id*. § 8(b).

There is no right to an administrative appeal from a decision to continue segregation at the 7, 30, and 60-day reviews.

3

*Issues and the sufficiency of the record*

Mr. McLaughlin claims that, in some manner, decisions of the DOC have violated either or both the procedures required by Directive #410.03 or his constitutional right to due process. He emphasizes that the initial DR was expunged and the factual findings at segregation hearings and reviews are sparse to nonexistent. The DOC generally responds that it is not required to follow the directive, Mr. McLaughlin has no applicable due process rights, and that he has received most or all of the reviews to which he is entitled. Moreover, it has submitted an affidavit that presumably is intended to justify continued segregation as necessary to protect inmate safety and order within the facility.

Evaluation of whether there are disputes of material fact is difficult due to the presentation of the case. While Petitioner has laid out a statement of facts that cites to the record in compliance with Rule 56(c)(1)(A) and has attached record documentation, Petitioner does not include an affidavit that provides context or explanation for the record documents. Furthermore, it appears that the entire record is not attached to Petitioner's motion. The response of Respondent appears to rely on significant additional documentation. Petitioner represents that these documents were not provided in discovery and thus not available to Petitioner. They complicate the factual material considerably, but it is still not clear that the court has the entire record. Moreover, the response to the Petitioner's statement of material facts does not clarify disputes of fact by citations to supporting documents or affidavits, but merely gives conclusory statements that there is a dispute; Respondent's memo then relies on facts by citing to an attached affidavit without lining the factual material up with Petitioner's statement of disputed facts. This presentation, complicated by Respondent's representation that Mr. McLaughlin has been on segregated status on a variety of grounds for periods that are not clearly specified in the facts, makes it extremely difficult to determine whether or not the record is complete and whether or not there are material facts in dispute.

As to legal issues, this case is not before the court for a de novo decision on whether Mr. McLaughlin should be segregated. This is a Rule 75 case. The court's role is to review the governmental action at issue and, to the extent that it is reviewable, determine its lawfulness. While the record is clear that Mr. McLaughlin is in administrative segregation, it is unclear which due process hearing and resulting segregation decision is the operative one; the record includes indications of several. It is also unclear what occurred at various hearings or whether Mr. McLaughlin appealed outcomes. If the case is before the court for review of the DOC's 7, 30, or 60-day review decisions, it is unclear whether Mr. McLaughlin exhausted administrative remedies by filing a grievance before seeking review in this court. Again, while documents showing the outcome of decisions are in the record, the full record of administrative proceedings appears not to be. This makes it difficult to analyze Petitioner's claim that the DOC has not followed required procedural requirements. Without an organized factual record, there is also an insufficient basis on which to consider Respondent's claim that the Petitioner has no right to require compliance with the terms of the DOC directive.

In short, the record is too incomplete for the court determine that either party is entitled to summary judgment. It consists almost entirely of *some* documentation of DOC decisions but includes little to none of the administrative record upon which any particular decision was made.

The findings, to the extent required, that ostensibly support continued segregation at the numerous reviews are sparse and, in one case, nonexistent. In short, the record is insufficient for the court to determine what, if any, procedural rights in Directive #410.03 apply to this case and whether they have been satisfied or whether some additional process is due.

The court also declines to address constitutional due process as a separate matter at this time. Under either the United States or Vermont constitution, consideration of Mr. McLaughlin's due process rights would have to include some examination of the conditions of his confinement in segregation. See *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (protected liberty interest sufficient to warrant procedural protections limited to freedom from "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *Parker v. Gorczyk*, 170 Vt. 263, 273 (1999) (rejecting *Sandin* and instead requiring "a fact-sensitive examination of the particular circumstances involved, including consideration of the nature and significance of the interest at stake, the potential impact of any decision resulting in a deprivation of that interest, and the role that procedural protections might play in such a decision"). Except for Mr. McLaughlin's assertion in argument that segregation is the equivalent of torture, the record is silent with regard to the actual conditions of Mr. McLaughlin's confinement. Neither the label "segregation" nor the duration of a status imposing unknown conditions alone is sufficient to evaluate due process rights.

## ORDER

For the foregoing reasons, Mr. McLaughlin's motion for summary judgment is *denied*. A status conference will be scheduled.

Dated at Montpelier, Vermont this _____ day of January 2015.

_____
Mary Miles Teachout,
Superior Judge

5